J-S22010-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA　　:　　IN THE SUPERIOR COURT OF
　　　　　　　　　　　　　　　　　　　　:　　　　　　PENNSYLVANIA
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　v.　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
ROBERT MENDOZA ESCOLASTICO　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　Appellant　　　　　　　　:　　No. 1843 MDA 2024

Appeal from the Judgment of Sentence Entered December 19, 2024
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0001395-2021

BEFORE: LAZARUS, P.J., BOWES, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:　　　　　　　**FILED: OCTOBER 7, 2025**

Robert Mendoza Escolastico appeals from the judgment of sentence, imposed in the Court of Common Pleas of Lebanon County, after a jury convicted him of one count each of possession with intent to deliver cocaine (PWID)[1] and criminal use of communication facility.[2] After careful review, we affirm.

The trial court set forth the relevant facts as follows:

On October 25, 2021, [Escolastico] took possession of a package delivered to his residence that contained roughly two (2) kilograms of cocaine. [Escolastico] alleged at trial that he was paid $500 by Juan Torres to pick up the package. While [Escolastico] apparently knew that the package contained drugs,

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

[2] 18 Pa.S.C.A. § 7512(a).

he said he did not know specifically what or how much was inside the packages.

On November 29, 2021, [Escolastico] was charged with numerous crimes, including [PWID and criminal use of communication facility]. [Escolastico]'s case proceeded to a jury trial on September 23, 2022. . . . Two special interrogatories were presented to the jury inquiring about the weight of the cocaine contained in the package and the weight [Escolastico] intended to deliver. The jury determined in each instance that the weight was in excess of one-thousand (1,000) grams.

Trial Court Opinion, 2/14/25, at 1-2.

Following trial, the jury found Escolastico guilty of PWID and criminal use of communication facility. Prior to sentencing, a pre-sentence investigation report (PSI) was prepared. The PSI provided applicable sentencing ranges, including that the standard range for Escolastico's PWID conviction started at a minimum of five years of confinement. The PSI also revealed that Escolastico was a citizen of the Dominican Republic, not the United States,[3] and that he had no prior record score.

At sentencing on November 9, 2022, sentencing counsel agreed with the PSI guidelines and asked that the trial court sentence Escolastico to the five-year minimum. *See* N.T. Sentencing Hearing, 11/9/22, at 2-3. The trial court sentenced Escolastico to a period of confinement of 5 to 10 years at his PWID conviction as well as 3½ years to 7 years of confinement for his

_____

[3] At the sentencing hearing, there was discussion on the deportation of Escolastico and that Escolastico would likely be "re-statused" by the United States Immigration and Customs Enforcement. N.T. Sentencing Hearing, 11/9/22, at 3-4. However, as the trial court noted, deportation is "out of [the trial court's] control," but urged "federal authorities to immediately deport [Escolastico] from this country when his prison term [] concluded." *Id.* at 4, 6.

conviction of criminal use of communication facility. The trial court imposed Escolastico's sentences concurrently. Additionally, the record reflects that, due to the weight of the controlled substance in Escolastico's possession, he was ineligible for the Recidivism Rick Reduction Incentive (RRRI) program.[4] **See** N.T. Sentencing Hearing, 11/9/22, at 7. Further, the trial court stated in its order that it did not recommend the RRRI program, the State Drug Treatment Program (SDTP),[5] or the State Boot Camp Program.[6] Order 11/9/22, at 2.

---

[4] **See** 61 Pa.C.S.A. §§ 4501-4512; **id.** at § 4503 (a person is ineligible for the RRRI program if the person has been found guilty of "drug trafficking," which includes PWID–controlled substance of at least 100 grams).

[5] **See** 61 Pa.C.S.A. §§ 4101-4109.

[6] **See** 61 Pa.C.S.A. §§ 3901-3909. Escolastico was ineligible for the State Boot Camp Program due to his sentence length of five to ten years. **Id.** at § 3903 (an eligible inmate is a person who is serving a term of confinement, "the minimum of which is not more than two years and the maximum of which is five years or less, or an inmate who is serving a term of confinement, the minimum of which is not more than three years where that inmate is within two years of completing his minimum term. . ."); **see also** Appellant's Brief, at 10 (stating that he was ineligible for State Boot Camp Program due to sentence length).

On November 21, 2022, Escolastico filed a counseled post-sentence motion to modify his sentence.[7]  On the same day, the trial court denied the motion.[8]  Escolastico did not file a notice of appeal.

Instead, on August 28, 2023, Escolastico filed a pro se petition pursuant to the Post-Conviction Relief Act (PCRA), *see* 42 Pa.C.S.A. §§ 9541-9545, and on September 15, 2023, PCRA counsel was appointed by the court.  On November 14, 2023, PCRA counsel sent Escolastico a *Turner*/*Finley*[9] no-merit letter and filed a petition to withdraw.  On January 29, 2024, the court denied PCRA counsel's petition to withdraw, directing counsel to communicate with Escolastico directly, and, on January 31, 2024, ordered PCRA counsel to either file an amended PCRA or a new motion to withdraw by March 1, 2024.

On March 1, 2024, PCRA counsel filed an amended PCRA petition, arguing that Escolastico was abandoned by his sentencing counsel and, therefore, was prevented from filing a direct appeal.  Based on this issue and

_____

[7] Typically, a written post-sentence motion shall be filed no later than 10 days after imposition of sentence.  **See** Pa.R.Crim.P. 720(1).  Here, the last day of the 10-day period for Escolastico to file a post-sentence motion fell on Saturday, November 19, 2022.  However, "[w]henever the last day of any such period shall fall on Saturday or Sunday . . . such day shall be omitted from the computation."  1 Pa.C.S.A § 1908.  Escolastico filed his post-sentence motion on Monday, November 21, 2022.  Thus, his post-sentence motion was timely.

[8] On June 2, 2023, Escolastico filed a pro se motion to modify his sentence, which the trial court denied on August 1, 2023.

[9] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (en banc).

the Commonwealth's response, the trial court ordered a factual hearing to determine whether Escolastico was abandoned by his sentencing counsel. Following the hearing, on November 25, 2024, the trial court reinstated Escolastico's direct appeal rights, nunc pro tunc.

On December 19, 2024, Escolastico filed a nunc pro tunc notice of appeal. Both Escolastico and the trial court complied with Pa.R.A.P. 1925. Escolastico raises the following issue on appeal: "Whether the sentence imposed on [Escolastico] was excessive in light of the fact that he was made ineligible for all state treatment programs at the time of sentencing?" Appellant's Brief, at 4.

Escolastico's sole issue on appeal is a challenge to the discretionary aspects of his sentence. Specifically, he claims that the trial court "made him ineligible" for SDTP. *See* Appellant's Brief, at 10.

"Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Tukhi*, 149 A.3d 881, 888 (Pa. Super. 2016). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

- 5 -

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (some

citations omitted). Regarding the fourth prong of the test:

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Battles*, 169 A.3d 1086, 1090-91 (Pa. Super. 2017)

(internal citations and quotation marks omitted). "[W]e cannot look beyond

the statement of questions presented and the prefatory [Rule] 2119(f)

statement to determine whether a substantial question exists."

*Commonwealth v. Radecki*, 180 A.3d 441, 468 (Pa. Super. 2018) (citation

omitted).

Here, Escolastico has satisfied the first three prongs of this test. *See*

Appellant's Brief, at 8-9. His appeal was timely, the issue was properly

preserved in a motion to modify his sentence, and he complied with the

requirements of Rule 2119(f). *Id.* at 8. As for the fourth prong, in his Rule

2119(f) statement, Escolastico avers that, by depriving him of eligibility for

SDTP when he was statutorily eligible and had no prior criminal record, his

sentence was outside the sentencing norms. *Id.* at 8-9.

As this Court has held, a claim that the sentencing court failed to

consider the rehabilitative needs of a defendant raises a substantial question

under the Sentencing Code. *Commonwealth v. Dodge*, 77 A.3d 1263, 1273

(Pa. Super. 2013) (en banc) ("we find that Appellant's claim that the

sentencing court disregarded rehabilitation and the nature and circumstances of the offense in handing down its [consecutive, standard range] sentence presents a substantial question for our review"); *see also Commonwealth v. Riggs*, 63 A.3d 780, 786 (Pa. Super. 2013) (claim that trial court "failed to consider relevant sentencing criteria, including protection of public, gravity of underlying offense and rehabilitative needs" of defendant, raised substantial question). Thus, we conclude that Escolastico has raised a substantial question, and we proceed to decide the merits of his claim.

We note "sentencing is a matter vested in the sound discretion of the sentencing judge, [whose judgment will not be] disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006). "[T]he appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill will, or arrived at a manifestly unreasonable decision." *Id.*

Escolastico argues that the trial court failed to consider that he had no prior record, as well as his remorse and need for rehabilitation, and by doing so, deprived him of the opportunity to be eligible for SDTP. *See* Appellant's Brief, at 11. In sum, Escolastico seeks resentencing to permit him to be eligible for SDTP because, "on its face[,]" he meets the criteria to be eligible for SDTP. *Id.* at 9, 11. Escolastico's claim has no merit.

A person is not eligible for SDTP if he has a current conviction, or a prior conviction within the past ten years, of "drug trafficking." *See* 61 Pa.C.S.A.

- 7 -

§ 4103 (defining "eligible person," ¶ (2)). "Drug trafficking" is defined, in relevant part, as:

> A violation of section 13(a)(14), (30) or (37) of [. . . t]he Controlled Substance, Drug, Device and Cosmetic Act, [35 P.S. § 780-101 et seq.,] where the controlled substance is. . .
>
> (3) Any of the following, if the aggregate weight of the compound or mixture of the substance involved is at least 100 grams:
>
> > (i) Coca leaves.
> >
> > (ii) A salt, compound, derivative[,] or preparation of coca leaves.
> >
> > (iii) A salt, compound, derivative[,] or preparation which is chemically equivalent or identical with any of the substances under subparagraphs (i) and (ii).
> >
> > (iv) A mixture containing any of the substances under subparagraphs (i) and (ii), except decocainized coca leaves or extracts of coca leaves which do not contain cocaine or ecgonine.

*Id.* (defining "drug trafficking," ¶ 3). PWID under 35 P.S. § 780-113(a)(30) prohibits:

> [e]xcept as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering[,] or possessing with intent to deliver, a counterfeit controlled substance.

*Id.*

Here, Escolastico was not denied eligibility for SDTP through any discretionary act or recommendation by the trial court; rather, he was statutorily ineligible for SDTP because of the weight of the controlled substance in his PWID conviction. The plain language of the statute is clear

- 8 -

that a person is not eligible for SDTP if he is convicted of PWID when the aggregate weight of the controlled substance is at least 100 grams. **See** 61 Pa.C.S.A. § 4103. **See also** 1 Pa.C.S.A. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). Escolastico was convicted of PWID over 1,000 grams of cocaine, clearly rendering him statutorily ineligible for SDTP due to the weight of the controlled substance. Therefore, the sentencing court did not abuse its discretion by not recommending Escolastico for SDTP and, accordingly, his claim fails. **See Shugars**, **supra**.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/07/2025